NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231007-U

NOS. 4-23-1007, 4-23-1008 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 11, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Ak. H. & Al. H., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Rock Island County |
| Petitioner-Appellee, | ) | Nos.  18JA70 |
| v. | ) | 18JA71 |
| Doughamite W., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Clayton R. Lee, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed the trial court's judgment terminating respondent's parental rights.

¶ 2     The State filed petitions to terminate the parental rights of respondent, Doughamite W., to his minor children, Ak. H. and Al. H. (twins born in September 2018). The parental rights of the minors' mother are not at issue in this appeal. The trial court found respondent to be an unfit parent and subsequently found termination of respondent's parental rights was in the best interest of the minors. In this consolidated appeal, respondent argues the court's unfitness and best interest determinations were against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3                             I. BACKGROUND

¶ 4         On October 17, 2018, the State filed petitions seeking to adjudicate the minors neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2018)). The State alleged the minors' environment was injurious to their welfare because they were not receiving adequate food or medical care necessary for their well-being and they had been diagnosed with nonorganic failure to thrive. Following a hearing, the trial court found probable cause that the minors were neglected and awarded temporary custody and guardianship to the Illinois Department of Children and Family Services (DCFS).

¶ 5         On March 1, 2019, the trial court entered an adjudicatory order finding the minors neglected. The court conducted a dispositional hearing that same day and found respondent unfit and unable to have custody of the minors. The court ordered temporary guardianship to remain with DCFS and set the permanency goal as return home within 12 months. In a supplemental order, respondent was required to attend and successfully complete parenting classes, obtain a substance abuse evaluation and follow any recommendations for treatment, cooperate with counseling, secure and maintain appropriate housing and income, and obtain a domestic violence assessment and follow any recommendations for treatment.

¶ 6         Over the following three years, the trial court conducted several permanency review hearings. Permanency orders were filed approximately every six months during that time period. Those orders indicate the court at times found respondent had made reasonable efforts and reasonable progress toward returning the minors to his custody. At other times during the three-year period, the court found respondent had not made either reasonable efforts or reasonable progress toward the goal. However, the permanency goal remained to return the minors home within 12 months until the court changed the goal in May 2022 to substitute care pending determination of termination of parental rights.

¶ 7          On October 28, 2022, the State filed supplemental petitions to terminate respondent's parental rights to both minors. The petition for each minor alleged respondent was an unfit parent because he (1) failed to make reasonable efforts to correct the conditions that were the basis for removing the minors during the nine-month period from September 1, 2021, through June 1, 2022 (750 ILCS 50/1(D)(m)(i) (West 2022)), (2) failed to make reasonable progress toward the return of the minors during that same nine-month period (*id*. § 1(D)(m)(ii)), and (3) did not have the ability to discharge his parental responsibilities and there was sufficient justification to believe the inability would extend beyond a reasonable period of time (*id*. § 1(D)(p)).

¶ 8                                A. Fitness Hearing

¶ 9                                1. *The State's Evidence*

¶ 10          At the fitness hearing on August 18, 2023, the State called Dr. Michelle Iyamah, a clinical psychologist. Dr. Iyamah testified she conducted a psychological evaluation and a parenting capacity assessment of respondent. She prepared a report and filed it with the trial court on February 22, 2022. Based on her observations of respondent interacting with the minors, Dr. Iyamah opined respondent showed a lack of ability to cope and "presented as sort of helpless in the situation." She also noted respondent was not honest with her about his use of marijuana and he had tested positive for methamphetamine. Respondent had been diagnosed with "significantly below-average" intellectual functioning. Given his intellectual functioning and ongoing concerns about his substance abuse, substantial and indefinite support would be required for respondent to safely parent the minors. Dr. Iyamah also opined respondent did not appear to have the ability to progress in parenting the minors. Respondent had received parenting support

from DCFS for the previous three years, and she did not know of any additional support that would allow him to parent the minors within a reasonable amount of time.

¶ 11　　　　DCFS caseworker Lela Donaldson testified the minors had been in the same placement since October 2018, shortly after their birth. Donaldson testified, "There continued to be concern with substance use as [respondent] tested positive on a few" of his drug drops. Respondent tested positive for methadone twice and methamphetamine once in September 2021. In September 2021, respondent's visitation with the minors was changed from unsupervised to supervised due to substance abuse concerns. Respondent was ordered to complete an additional substance abuse assessment as a result of his history of positive tests, but he failed to complete the assessment until August 2022. Donaldson testified when she asked respondent why he had delayed getting the assessment, he stated he "hadn't had time to do so."

¶ 12　　　　Respondent completed a parenting course, but "it was documented that at times [he] was argumentative when feedback was given" and he "struggled to parent independently." Donaldson opined there was no reasonable likelihood of reunifying the minors with respondent in the near future given the substance abuse concerns and his history of not being able to parent the minors independently and without support.

¶ 13　　　　　　　　　　　　　2. *Respondent's Evidence*

¶ 14　　　　Respondent's father, Albert Johnston, testified he saw respondent on a weekly basis. Johnston testified respondent managed his own finances and lived independently. Respondent currently lived in a two-bedroom apartment. Johnston disagreed with the results of Dr. Iyamah's parenting capacity assessment that respondent was unable to parent the minors. In Johnston's opinion, respondent was able to parent the minors independently.

¶ 15        Respondent also called his friend, Sandra Johnson, to testify. She testified respondent managed his own finances, he did not drink alcohol after the minors were born, and she did not have concerns about him using other substances. She had been present at respondent's apartment during his visitation with the children and had no concerns with his ability to parent them independently.

¶ 16        Respondent testified he managed his finances independently. He had two older children, ages 11 and 8, and he had frequent contact with them. He made meals for them and helped them with their homework. He denied having a problem with alcohol and stated he had not consumed alcohol for the past three or four years. Respondent also denied currently using any other drugs. Respondent believed he could parent the minors independently.

¶ 17        3. *The State's Rebuttal Evidence*

¶ 18        The State recalled Lela Donaldson. She testified respondent's father and Sandra Johnson were not present during respondent's supervised visits with the minors during the relevant time period. No one other than respondent had been approved to participate in those supervised visits. Donaldson testified, given the results of the parenting capacity assessment, respondent would require live-in daily support to safely parent the minors and that was not currently in place.

¶ 19        4. *Trial Court's Ruling*

¶ 20        The trial court found respondent failed to make reasonable efforts to correct the conditions that led to the removal of the minors and failed to make reasonable progress toward the return of the minors during the relevant nine-month period. The court also found the State proved respondent had an inability to discharge his parental responsibilities and there was sufficient justification to believe the inability would extend beyond a reasonable time period. The

court noted respondent tested positive for methadone and methamphetamine on two separate occasions at the beginning of the relevant period in September 2021, and he failed to complete the additional substance abuse evaluation until August 2022. He also failed to demonstrate appropriate parenting skills during the relevant time period. Based on the evidence, the court found the State met its burden of proving respondent unfit by clear and convincing evidence.

¶ 21                                    B. Best Interest Hearing

¶ 22                                    1. *The State's Evidence*

¶ 23            At the best interest hearing on October 6, 2023, the State introduced the best interest report prepared by caseworker Lela Donaldson. According to the report, the minors had been placed with the same foster family since October 16, 2018, and the foster parents were willing and able to adopt them. The foster parents had met all the needs of the children. The children had adjusted well and bonded with their foster parents.

¶ 24            The report indicated the foster parents had a four-bedroom home on land where they had developed a working farm. According to the report, the minors "love to do activities with the foster parents. They go on vacations and the girls have been in family and friends' weddings. The girls have participated in swimming lessons and enjoy going to the trampoline park." Further, "[t]he foster parents treat both girls as their own. [The foster mother] is a stay-at-home mother and will plan to home school the girls once the adoption is finalized. [The foster parents] have a huge community support system in the school, their church and fellow foster families."

¶ 25                                    2. *Respondent's Evidence*

¶ 26            Respondent called his aunt, Marsha Johnston, to testify. She testified she met the minors on four occasions and would like to "keep them in the family." She lived in a

one-bedroom apartment in Davenport, Iowa, but could get a larger residence if the minors were placed with her. She testified she was capable of caring for the minors, having already raised four children of her own. On cross-examination, Johnston testified she first learned of the termination of parental rights proceeding at a party for the minors' fifth birthday. She never requested placement of the children with her during the pendency of this case because she thought they would be returned to respondent.

¶ 27        Respondent testified he preferred placement with his aunt, Marsha Johnston. He asserted his other family members were "denied" as options for adopting the minors. He believed his aunt was the best placement because she was educated, worked hard, and had raised children herself. She was willing to "take up the responsibility" to keep the children in the family.

¶ 28                                3. *The State's Rebuttal Evidence*

¶ 29        In rebuttal, caseworker Donaldson testified she had never met or communicated with Marsha Johnston prior to the hearing and respondent had never identified Johnston as a potential placement option. She testified DCFS would have explored Johnston as a placement option if respondent or any other family member had requested that during the pendency of the case.

¶ 30                                4. *Trial Court's Ruling*

¶ 31        Following the hearing, the trial court found it was in the minors' best interest to terminate respondent's parental rights and entered orders to that effect.

¶ 32        Respondent filed notices of appeal from the orders terminating his parental rights to both minors. We consolidated the appeals on our own motion.

¶ 33        This appeal followed.

¶ 34                                II. ANALYSIS

¶ 35    The Juvenile Court Act provides a two-step process for involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2022). First, the State must prove by clear and convincing evidence that the parent is an "unfit person," as defined by section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E. 2d 508, 516 (2005). Second, if the trial court finds a parent unfit, the State must establish by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re D.T.*, 212 Ill. 2d 347, 353, 818 N.E. 2d 1214, 1220-21 (2004).

¶ 36                              A. Unfitness Finding

¶ 37    Respondent contends the trial court's finding of unfitness was against the manifest weight of the evidence. He argues the court erred in finding him unfit on each of the three bases alleged by the State.

¶ 38    In this case, the trial court found respondent unfit because he (1) failed to make reasonable efforts to correct the conditions which were the basis for removal of the minors from his custody during the nine-month period from September 1, 2021, through June 1, 2022 (750 ILCS 50/1(D)(m)(i) (West 2022)), (2) failed to make reasonable progress toward the return of the minors during the same nine-month period (*id.* § 1(D)(m)(ii)), and (3) did not have the ability to discharge his parental responsibilities and there was sufficient justification to believe the inability would extend beyond a reasonable time period (*id.* § 1(D)(p)). "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *Gwynne P.*, 215 Ill. 2d at 349.

¶ 39    Section 1(D)(m)(ii) of the Adoption Act provides a parent may be found unfit if he or she fails "to make reasonable progress toward the return of the child to the parent during

- 8 -

any 9-month period following the adjudication" of neglect. 750 ILCS 50/1(D)(m)(ii) (West 2022).

> " 'Reasonable progress' is an objective standard which exists when the trial court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E. 2d 1375, 1387 (1991).

In determining whether a parent has made reasonable progress, courts may consider evidence occurring only during the relevant nine-month period. *In re J.L.*, 236 Ill. 2d 329, 341, 924 N.E. 2d 961, 968 (2010). A court is not permitted to consider evidence outside the nine-month period. *In re D.F.*, 208 Ill. 2d 223, 242-43, 802 N.E. 2d 800, 812 (2003).

¶ 40 A trial court's finding that a parent is unfit will not be reversed unless it is against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29, 115 N.E. 3d 102. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Id*.

¶ 41 Here, the relevant nine-month period began on September 1, 2021. Respondent tested positive for both methadone and methamphetamine in September 2021. Donaldson testified, "There continued to be concern with substance use as [respondent] tested positive on a few" of his drug drops. Due to the positive tests, respondent was required to complete an

additional substance abuse evaluation, but he did not complete the evaluation until August 2022, after the relevant nine-month period had ended. Respondent told Donaldson he "hadn't had time" to obtain the assessment. The record shows substance abuse remained a concern at the conclusion of the relevant nine-month period and respondent failed to make any demonstrable progress to address that concern.

¶ 42    The record also establishes respondent failed to make demonstrable progress toward parenting the minors without extensive support. In September 2021, respondent's visitation was changed from unsupervised to supervised. Given concerns about respondent's intellectual functioning and his substance abuse, Dr. Iyamah testified substantial and indefinite support would be required for respondent to safely parent the children. According to Dr. Iyamah, respondent did not appear to have the ability to progress in parenting the minors. Her opinion was supported by Donaldson's testimony that respondent was argumentative at times in response to parenting feedback and struggled to parent the children independently. The record indicates respondent did not make demonstrable progress toward unsupervised visitation or independently parenting the children during the relevant nine-month period.

¶ 43    We note the fitness hearing in this case occurred more than four years after the minors were adjudicated neglected. The concerns about returning the children to respondent's care remained and were not addressed during the relevant nine-month period. Respondent did not make demonstrable progress toward the minors' return to his custody during the nine-month period. Based on this record, we cannot conclude the minors may be returned to respondent's custody in the near future. Accordingly, the trial court's unfitness finding was not against the manifest weight of the evidence.

¶ 44                        B. Best Interest Determination

¶ 45        Respondent also argues the trial court's best interest determination was against the manifest weight of the evidence. He contends the court erred in finding it was in the best interest of the minors to terminate his parental rights given the strong bond he shared with the children.

¶ 46        Following a finding of unfitness, the parent's interest in maintaining a parent-child relationship must yield to the best interest of the child. *D.T.*, 212 Ill. 2d at 364. At the best interest hearing, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest. *Id*. at 366. In making its finding, the trial court considers the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). The statutory factors include: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including where the child feels love, security, and familiarity; (5) the child's wishes; (6) the child's community ties, including church, school, and friends; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; and (8) the uniqueness of every family and child. *Id.*

¶ 47        The trial court's best interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33, 147 N.E. 3d 953. "A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 48        The evidence presented in this case shows the children had been cared for by their foster family since they were less than one month old. The children are now five years old. They were bonded with their foster parents, and the foster parents were willing and able to adopt them. Their needs for safety, attachment, stability, and permanence were met by the foster family. The

minors' community ties were with the foster family, including their school, church, and other foster families.

¶ 49　　　Although respondent maintains he and the children "developed strong affection," the evidence in this case shows he was unable to care for them over a significant period of time. The minors' need for permanence is an important consideration, particularly given the length of time this case has been pending. The record does not clearly demonstrate the trial court should have reached the opposite result. Accordingly, we conclude the court's best interest determination was not against the manifest weight of the evidence.

¶ 50　　　　　　　　　　　III. CONCLUSION

¶ 51　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 52　　　Affirmed.